# UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| IN RE: | ) | Chapter 11 |
| | ) | Jointly Administered |
| AMERICAN CONSOLIDATED | ) | |
| TRANSPORTATION | ) | Case No. 09-26062 |
| COMPANIES, INC., *et al.*, | ) | |
| | ) | Honorable Jack B. Schmetterer |
| Debtors. | ) | |

## DEBTOR'S EIGHTH AMENDED CHAPTER 11 PLAN OF REORGANIZATION

**DEBTORS' COUNSEL**
SCOTT R. CLAR, ESQ.
(Atty. No. 06183741)
CRANE, HEYMAN, SIMON, WELCH & CLAR
135 S. LaSalle, #3705
Chicago, IL 60603
(312) 641-6777
(312) 641-7114 (fax)

# TABLE OF CONTENTS

**Page**

ARTICLE 1.
    DEFINITIONS AND RULES OF CONSTRUCTION . . . . . . . . . . . . . . . . . . . . -2-
    1.1    Definitions . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -2-
    1.2    Interpretation . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -7-
    1.3    Application of Definitions and Rules of Construction Contained in
           the Bankruptcy Code . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -7-

ARTICLE 2
    GENERAL PLAN PREMISES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -7-

ARTICLE 3.
    ADMINISTRATIVE AND PRIORITY CLAIMS . . . . . . . . . . . . . . . . . . . . . . . -8-
    3.1    Unclassified Claims . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -8-
    3.2    *Treatment of Unclassified Claims* . . . . . . . . . . . . . . . . . . . . . . . . . . -9-
    3.3    *Deadline for Filing Administrative Expense Claims* . . . . . . . . . . . . . . -11-

ARTICLE 4.
    CLASSIFICATION AND TREATMENT OF CLAIMS AND EQUITY
    INTERESTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -12-
    4.1    *Classification of Claims and Interests* . . . . . . . . . . . . . . . . . . . . . . -12-
    4.2    *Classes* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -12-
    4.3    *Classification of Claims* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -12-

ARTICLE 5
    IMPAIRMENT OF CLASSES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -14-

ARTICLE 6
    MEANS FOR IMPLEMENTATION OF THE PLAN . . . . . . . . . . . . . . . . . . -15-
    6.1    *Claims Bar Date* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -15-
    6.2    Consolidation for Distribution Purposes Only . . . . . . . . . . . . . . . . . . -15-
    6.3    Sale of Assets . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -15-
    6.4    *Release and/or Assignment of Causes of Action* . . . . . . . . . . . . . . -15-
    6.5    *Litigation* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -16-
    6.6    *Courts and Venue* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -16-
    6.7    *Payments.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -16-
    6.8    *Changes in Business and Business Operation* . . . . . . . . . . . . . . . . -16-
    6.9    *Reduced Rental to D&B Rental, LLC* . . . . . . . . . . . . . . . . . . . . . . -16-
    6.10  *Management* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -17-
    6.11  *Sales Effort* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -17-
    6.12  *Refurbishment of Current Coaches* . . . . . . . . . . . . . . . . . . . . . . -17-
    6.13  *Computer Upgrade* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -17-

ARTICLE 7
    MANAGEMENT AND OPERATION OF THE REORGANIZED DEBTORS . -17-
    7.1    *Post-Confirmation Rights of Holders of Equity Interests* . . . . . . . . . . -17-
    7.2    *Post-Confirmation Management* . . . . . . . . . . . . . . . . . . . . . . . . . . -17-

ARTICLE 8
    AMENDMENTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -18-

ARTICLE 9
    EXECUTORY CONTRACTS AND LEASES . . . . . . . . . . . . . . . . . . . . . . . -18-
    9.1   *Assumption or Rejection of Executory Contracts* . . . . . . . . . . . . . . . -18-
    9.2   *Cure of Defaults* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -18-
    9.3   *Continuing Jurisdiction* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -18-

ARTICLE 10
    PROVISIONS RELATED TO DISPUTED CLAIMS . . . . . . . . . . . . . . . . . . . -18-
    10.1  *Reservation of Rights* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -18-
    10.2  *Resolution of Disputed Administrative Expense Claims and Disputed*
            *Claims* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -19-
    10.3  *No Payments* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -19-
    10.4  *Claim Dispute Resolution Procedures* . . . . . . . . . . . . . . . . . . . . . . . -19-

ARTICLE 11
    PROVISIONS RELATED TO DELIVERY OF DISTRIBUTIONS UNDER
     PLAN . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -19-
    11.1  *Distribution by U.S. Mail* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -19-
    11.2  *Change of Addresses* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -20-
    11.3  *De Minimus Distributions and Rounding* . . . . . . . . . . . . . . . . . . . . . -20-
    11.4  *Undeliverable Distributions* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -20-
    11.5  *Compliance With Tax Requirements* . . . . . . . . . . . . . . . . . . . . . . . . -20-
    11.6  *Setoffs* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -20-

ARTICLE 12
    CONSUMMATION OF PLAN AND VESTING OF ASSETS . . . . . . . . . . . . -20-
    12.1  *Vesting and Transfer of Assets to Reorganized Debtors* . . . . . . . . . . -20-

ARTICLE 13
    RETENTION OF JURISDICTION AND SUPERVISION OF THE PLAN . . . . -21-
    13.1  *Scope of Jurisdiction* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -21-

ARTICLE 14
    DISCHARGES AND RELEASES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -22-
    14.1  *No Liability for Solicitation or Participation* . . . . . . . . . . . . . . . . . . . -22-
    14.2  *Release of Claims* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -22-
    14.3  *Effect of Confirmation* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -22-
    14.4  *Exculpation* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -22-
    14.5  *Injunction* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -22-

ARTICLE 15
    MISCELLANEOUS PROVISIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -23-
    15.1  *No Interest* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -23-
    15.2  *No Attorneys' Fees* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -23-
    15.3  *No Waiver of Discharge* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -23-
    15.4  *Confirmation Over Objection* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -23-
    15.5  *Right to Pay* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -23-
    15.6  *Effectuating Documents and Further Transactions* . . . . . . . . . . . . . . -23-

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| IN RE: | ) | Chapter 11 |
| | ) | Jointly Administered |
| AMERICAN CONSOLIDATED | ) | |
| TRANSPORTATION | ) | Case No. 09-26062 |
| COMPANIES, INC., *et al.*,[1] | ) | |
| | ) | Honorable Jack B. Schmetterer |
| Debtors. | ) | |

## DEBTORS' EIGHTH AMENDED CHAPTER 11 PLAN OF REORGANIZATION[2]

## PLAN PROPONENT

American Consolidated Transportation Company, Inc. and each of the other Debtors

included in the administratively consolidated captioned Chapter 11 cases, as debtors and

debtors-in-possession, hereby propose the following Eighth Amended Chapter 11 Plan of

---

1  The lead case is jointly administered with the cases of nine of American Consolidated Transportation Companies, Inc.'s affiliates, including: Davidsmeyer Bus Service, Inc. (09-26067); Mid-America Charter Lines, Inc. (09-26069);Central States Coach Parts, Inc. (09-26072); Mid-America Tours, Inc. (09-26073);Central States Coach Repairs, Inc. (09-26074); Mid-America Travel, Inc. (09-26079); Colorado Charter Lines, Inc. (09-26078); Central West Motor Stages, Inc. (09-26075); and D&B Rental, LLC (09-26083).

[2]  The Seventh Amended Plan of Reorganization is filed in connection with the status hearing and  hearing to approve adequacy of disclosure statement to be held on October 13, 2011 at 1:30 p.m. and represents modified treatment of the secured claim of RBS Citizens Bank d/b/a Charter One, and a clarification of the treatment of real estate tax claims.  The Debtor withdrew their Fourth Amended Plan of Reorganization in order to present a more economically feasible plan and to detail significant charges in the Debtors' business and revenue projections.  The current Plan as amended also reflects proposed liquidation of certain non-essential assets such as real property owned by debtor D&B Rental LLC in Harvard, Illinois and 46 school buses not necessary for the Debtors' continued operations (the "Obsolete Buses").  The Obsolete Buses have been sold pursuant to Order of this Court and the proceeds paid to the Bank.  The  . Debtors are also considering the sale of other assets as well.  Liquidation of these assets will reduce the amount of the Debtors' secured debt and enable the Debtors to continue operations.

of Reorganization, pursuant to the provisions of Chapter 11 of Title 11 of the United States

Code.

# ARTICLE 1.
## DEFINITIONS AND RULES OF CONSTRUCTION

 1.1 <u>Definitions</u>. As used herein, the following terms have the respective meanings specified below, unless the context otherwise requires:

 1.1.1 "***ACTC***" or "***Debtors***" means American Consolidated Transportation Companies, and American Consolidated Transportation Companies, Inc.'s affiliates, with which this matter is jointly administered, including: Davidsmeyer Bus Service, Inc. (09-26067); Mid-America Charter Lines, Inc. (09-26069);Central States Coach Parts, Inc. (09-26072); Mid-America Tours, Inc. (09-26073);Central States Coach Repairs, Inc. (09-26074); Mid-America Travel, Inc. (09-26079); Colorado Charter Lines, Inc. (09-26078); Central West Motor Stages, Inc. (09-26075); and D&B Rental, LLC (09-26083).

 1.1.2 "***Administrative Expense Claim***" means any right to payment constituting a cost or expense of administration of the Chapter 11 Case under §§503(b) and 507(a)(2) of the Bankruptcy Code, including, without limitation, any actual and necessary costs and expenses, of preserving the estate of the Debtors, any actual and necessary costs and expenses of operating the business of the Debtors, any indebtedness or obligations incurred or assumed by the Debtors-in-Possession in connection with the conduct of their business, including, without limitation, for the acquisition or lease of property or an interest in property or the rendition of services, all compensation and reimbursement of expenses to the extent allowed by the Bankruptcy Court under §§330 or 503 of the Bankruptcy Code.

 1.1.3 "**Administrative Expense Claim Deadline**" shall have the meaning ascribed thereto in Section 3.3 of the Plan.

 1.1.4 "***Allowed***" means where referenced to any Claim or Equity Interest, (a) any Claim against, or Equity Interest in, the Debtors which has been listed by the Debtors in good faith in their Schedules, as such Schedules may be amended by the Debtors from time to time, in accordance with Bankruptcy Rule 1009, as liquidated in amount and not disputed (*i.e.*, not subject to a bona fide dispute) or contingent and for which no contrary proof of Claim or Equity Interest has been filed, (b) any Claim or Equity Interest allowed by a Final Order of the Bankruptcy Court, or (c) any Claim or Equity Interest which is not Disputed, or any Disputed Claim or Equity Interest as to which the liability of the Debtors and the amount thereof are determined by a Final Order; <u>provided</u>, <u>however</u>, that any Claim or Equity Interest allowed <u>solely</u> for the purpose of <u>voting</u> to accept or reject the Plan pursuant to a Final Order of the Bankruptcy Court shall <u>not</u> be considered an "Allowed Claim" or "Allowed Equity Interest" hereunder (and particularly for

-2-

treatment under the Plan of Reorganization, including distributions of dividends or other property).

      1.1.5  Unless otherwise specified herein or by Final Order of the Bankruptcy Court, "Allowed Administrative Expense Claim," "Allowed Claim," " Allowed Secured Claim," or "Allowed Equity Interest" shall not for purposes of computation of distributions under the Plan, include interest on such Administrative Expense Claim, Claim or Equity Interest from and after the Commencement Date.  An "Allowed Secured Claim" will be computed in accordance with § 506 of the Bankruptcy Code.

      1.1.6  **"Allowed Claim**" means a Claim, as defined in 1.1.14 of this section, which is both determined and no longer subject to any appeal, rehearing or reconsideration.

      1.1.7  "***Annual Net Income***" or "***Net Income***" means the Net Income (Loss) Before Taxes earned by the Debtors for each calendar year, as calculated and determined in the manner set forth in the Disclosure Statement and as displayed therein.

      1.1.8  "**Bank**" means RBS Citizens d/b/a Charter One.

      1.1.9  "**Bank Claim**" means the secured claim of RBS Citizens d/b/a Charter One.

      1.1.10. "**Bankruptcy Code**" means Title 11 of the United States Code, as amended from time to time.

      1.1.11.  "**Bankruptcy Court**" means the United States Bankruptcy Court for the Northern District of Illinois having jurisdiction over these Chapter 11 Cases.

      1.1.12.  "**Bankruptcy Rule**" or "**Rules**" means the Federal Rules of Bankruptcy Procedure and any Local Rules of the Bankruptcy Court.

      1.1.13.  "**Business Day**" means a day that is not a (1) Saturday; (2) Sunday; (3) a legal holiday where the Bankruptcy Court is closed.

      1.1.14.  "**Cause of Action**" shall mean any and all accounts, contract rights, general intangibles and any and all rights, claims, or causes of action of any kind, whether legal or equitable, of the Debtors for affirmative recovery of cash or other property of the estate (whether such causes of action are the subject of presently pending lawsuits, adversary proceedings, appeals, or otherwise) which accrue prior to or after the Confirmation Date, whether from matters that occurred prior to or after the Confirmation Date, including, without limitation, any rights or claims under § 510 and §§ 544 through 550 of the Code, and any state law rights or claims belonging to the Debtors.

-3-

1.1.15.   "**Claim**" has the meaning set forth in § 101(5) of the Bankruptcy Code.

1.1.16.   "**Claims Register**" means the list of proofs of Claim prepared and maintained by the Clerk of the Bankruptcy Court.

1.1.17.   "**Class**" means a category of holder of Claims or Equity Interests as set forth in Article 4 of the Plan.

1.1.18.   "**Collateral**" means any property or interest in property of the estate of the Debtors subject to a Lien or Security Interest to secure the payment or performance of a Claim, which Lien or Security Interest is not subject to avoidance under the Bankruptcy Code or otherwise invalid under the Bankruptcy Code or applicable non-bankruptcy law.

1.1.19   "**Commencement Date**" or "**Petition Date**" means the date Debtors filed their petitions for relief under Chapter 11 of Title 11 of the United States Code, that being July 18, 2009.

1.1.20   "**Confirmation**" or **Confirmation Date**" means the date on which the Confirmation Order is entered.

1.1.21   "**Confirmation Hearing**" means the hearing held by the Bankruptcy Court to consider confirmation of the Plan pursuant to §1129 of the Bankruptcy Code, as such hearing may be adjourned or continued from time to time.

1.1.22   "**Confirmation Order**"   means the Order of the Bankruptcy Court confirming the Plan pursuant to §1129 of the Bankruptcy Code.

1.1.23   "**Contingent Claim**" means any Claim which has not been Finally Allowed as of the Confirmation Date, including, without limitation, any Claims which may be asserted as the result of the rejection of an executory contract or unexpired lease under Section 2.5 of this Plan.

1.1.24   "**Convenience Class Election**"   shall have the meaning ascribed thereto in Section 4.4.4 of this Plan.

1.1.25   "**Creditor**" means the holder of a Claim against the Debtors.

1.1.26   "**Debtor**" or "**Debtors**" means American Consolidated Transportation Companies, and American Consolidated Transportation Companies, Inc.'s affiliates, with which this matter is jointly administered, including: Davidsmeyer Bus Service, Inc. (09-26067); Mid-America Charter Lines, Inc. (09-26069);Central States Coach Parts, Inc. (09-26072); Mid-America Tours, Inc. (09-26073);Central States Coach Repairs, Inc. (09-

26074); Mid-America Travel, Inc. (09-26079); Colorado Charter Lines, Inc. (09-26078); Central West Motor Stages, Inc. (09-26075); and D&B Rental, LLC (09-26083).

      1.1.27 "**Debtors-in-Possession**" or "**DIP**" means the Debtors in their capacity as Debtors-in-Possession in these Chapter 11 Cases pursuant to §§1101, 1107(a) and 1108 of the Bankruptcy Code.

      1.1.28 "**Disbursing Agent**" means the Reorganized Debtors or such other entity as the Bankruptcy Court may approve and appoint to hold and distribute the consideration to be distributed to holders of Allowed Claims pursuant to the provisions of this Plan and any Orders pertaining to such Allowed Claims.

      1.1.29 "**Disclosure Statement**" means the disclosure statement relating to this Plan, including without limitation, all exhibits and schedules thereto, as approved by the Bankruptcy Court pursuant to §1125 of the Bankruptcy Code.

      1.1.30 "**Disputed Claim**" shall mean a claim, or any portion thereof, as to which written objection to the allowance or classification thereof has been timely filed by any party in interest and as to which no Final Order sustaining such objection or allowing or disallowing such claim, in whole or in part, has been entered by the Court. A claim shall also be considered a Disputed Claim if (i) the amount of any Proof of Claim filed exceeds the amount of any corresponding claim scheduled by the Debtors in the Schedules, (ii) the Schedules list such claim as disputed, contingent or unliquidated, (iii) there is a dispute as to the classification of such claim or (iv) if any objection is filed to any Final Professional Fee Application or any Professional Fee Application [interim, final or otherwise] whether such application requests (1) immediate payment, (2) granting of the Fee as an Administrative Priority, or (3) recognition as an Administrative Priority.

      1.1.31 "**Disputed Claim Amount**" means the higher of the amount set forth in the proof of Claim or listed on the Schedules relating to a Disputed Claim; provided, however, if a Disputed Claim is estimated for allowance purposes under § 502(c) of the Bankruptcy Code, the amount so estimated pursuant to Final Order of the Bankruptcy Court shall be the Disputed Claim Amount.

      1.1.32 "**Effective Date**" means the thirty (30) days after which the Confirmation Order becomes a Final Order.

      1.1.33 "**Equity Interest**" means an ownership interest in the Debtors.

      1.1.34 "**Final Order**" means an order or judgment of the Bankruptcy Court or any other court of competent jurisdiction as to which the time to appeal, seek a writ, petition for certiorari, or seek reargument or rehearing has expired and as to which no appeal, reargument, certiorari petition, or rehearing is pending, or if an appeal, reargument, certiorari or rehearing thereof has been sought, the order has been affirmed by the highest

court to which the order was appealed or from which the reargument or rehearing was sought, or certiorari has been denied, or the appeal is dismissed or rendered moot, and the time to take any further appeal or to seek certiorari or further reargument or rehearing has expired.

      1.1.35   "**Litigation**" means (1) any presently existing lawsuit, arbitration proceeding, or adversary proceeding; (2) any cause of action that might lead to a lawsuit, arbitration, or proceeding <u>after</u> Confirmation; (3) objection to a Claim; (4) a motion to clarify the Plan treatment of a claimant; and (5) any motion filed under the retention of jurisdiction provisions of this Plan.

      1.1.36   "**Other Priority Claim**" means any Claim, other than an Administrative Expense Claim or a Priority Tax Claim, entitled to priority in right of payment under § 507(a) of the Bankruptcy Code.

      1.1.37   "**Plan**" means this Chapter 11 Plan of Reorganization, including, without limitation, all amendments, modifications, exhibits, supplements, appendices and schedules hereto, either in its present form or as the same may be altered, amended or modified from time to time in the future.

      1.1.38   "**Priority Tax Claim**" means any Claim of a governmental unit of the kind specified in §§502(i) and 507(a)(8) of the Bankruptcy Code.

      1.1.39   "**Professional Fee Claim**" shall mean an Allowed Administrative Expense Claim asserted by an Entity whose retention was approved by the Bankruptcy Court pursuant to §327 of the Bankruptcy Code.

      1.1.40   "**Real Estate Tax Claims**" shall mean the Allowed Pre-Petition Secured Claims of the counties in which the Debtors' real property is located in Illinois, Colorado and Texas.

      1.1.41   "**Reorganized Debtor**" or "**Reorganized Debtors**" shall mean the debtor or Debtors after the Effective Date.

      1.1.42   "**Schedules**" means the Schedules of Assets and Liabilities, the List of holders of Equity Interests, and the Statements of Financial Affairs filed by the Debtors under § 521 of the Bankruptcy Code and Bankruptcy Rule 1007, and all amendments and modifications thereto through the Confirmation Date.

      1.1.43   "**Secured Claims**" means any Claim that is secured by an unavoidable lien on property in which the Debtors have an interest or that is subject to setoff under § 553 of the Bankruptcy Code, to the extent of the value of the claimholder's interest in the Debtors' interest in such property or to the extent of the amount subject to setoff, as applicable, as determined pursuant to § 506(a) of the Bankruptcy Code.

1.1.44 "**Unsecured Claim**" means any Claim that is not a Secured Claim or a Claim entitled to priority under the Bankruptcy Code, including any undersecured (and thus, unsecured under Section 506) portions of any ostensibly or alleged (*e.g.*, claimed) secured claim or claims.

1.2 <u>Interpretation</u>. Unless otherwise specified, all section, article and exhibit references in the Plan are to the respective section in, article of or exhibit to, the Plan, as the same may be amended, waived or modified from time to time. The headings in the Plan are for convenience of reference only and shall not limit or otherwise affect the provisions hereof. Words denoting the singular number shall include the plural number, and vice versa, and words denoting one gender shall include the other gender.

1.3 <u>Application of Definitions and Rules of Construction Contained in the Bankruptcy Code</u>. Words and terms defined in § 101 of the Bankruptcy Code shall have the same meaning when used in the Plan, unless a different definition is given in the Plan. The rules of construction set out in section 102 of the Bankruptcy Code shall apply to the construction of the Plan, unless a different construction is given in the Plan.

## ARTICLE 2
## GENERAL PLAN PREMISES

2.1 Contrary to the assertions of the Bank in its frequent pleadings, including the Bank's motion to convert, the Debtors are <u>not</u> liquidating their entire business. Whereas the Bank has made clear its intention to terminate the Debtors' sixty-four (64) year old business, and eliminate approximately 150 jobs in three (3) states, the Debtors have made great strides in revamping their business in a depressed economy, and have made the necessary decisions to liquidate certain non-essential assets in order to continue business operations, reduce secured debt, and survive in a depressed economy. The Bank appears to want nothing more than to get its hands on the Debtors' valuable real estate to satisfy its secured claim, at the expense of employees, vendors and those who have been served by the Debtors during its proud 70-year history. The Debtors are a major provider of services for senior citizens and other groups.

The major premise of the Debtors' Plan is the payment of 100% of the Allowed Claims owed to all Creditors, the continuation of the businesses, the retention of jobs, and the continued business with the multitude of vendors to the Debtors during a time of severe economic stress nationwide. The difference between this Plan and previous plans proposed by the Debtors are the aforementioned liquidation of non-essential or non-producing assets thereby reducing secured debt, modified treatment of secured claim of the Bank to include certain reporting requirements, as conditions of default, modified provision for payment of Real Estate Tax Claims, and extension of the time period to pay Unsecured Claims from two (2) to four (4) years.

2.2 The obligation of the secured position held by the Bank will be paid over two and one-half (2.5) years from the Effective Date according to a thirty (30) year amortization

schedule, with a balloon payment at the end of the two and one-half (2.5) year period.[3] Payments to the secured creditor shall begin on the Effective Date. The Court determined amount will be at the contractual rate of 6.75%. The Reorganized Debtors may prepay the debt with no pre-payment penalty, and upon payment the Security Agreement shall, in the sole discretion of the Reorganized Debtors, either be marked "cancelled" or shall be assigned to an individual or entity designated by the Reorganized Debtors. The Debtors will provide certain reports to the Bank and have agreed herein to, upon notice and failure to cure, exercise of the Bank's remedies upon default.

### EXAMPLES OF RBS
### MONTHLY PAYMENT BASED ON POTENTIAL
### FINALLY ALLOWED CLAIM AMOUNTS

2.2.1  For purposes of the Plan the Debtors estimate the monthly payments based on the Bank's above potential Allowed Claim amounts to be approximately $36,000.00 to approximately $50,000.00. In the event the Court determines that the interest rate provided for the Bank in this Plan (6.75%) is incorrect or insufficient to comply with Sections 1123 and/or 1129 of the Bankruptcy Code, the appropriate interest rate will be determined by the Court.

2.3  The Debtors intend to simultaneously pursue a full or partial refinancing of the secured debt and have employed Dean Balice of Scott Balice Strategies for that purpose pursuant to Order of this Court. These actions have commenced prior to confirmation. If the Debtors obtain approved financing, the Debtors may seek an order from the Court allowing the Debtors to pay either (1) in full or (2) in part the Bank Debt for release of a portion of the collateral.

### ARTICLE 3.
### ADMINISTRATIVE AND PRIORITY CLAIMS

3.1  Unclassified Claims. Pursuant to § 1123 of the Bankruptcy Code, a plan must classify all claims into one or more classes, except for certain claims entitled to priority. Section 1123 further provides that only those claims that are substantially similar may be placed in the same Class. In accordance with § 1123(a)(1) of the Bankruptcy Code, Administrative Expense Claims and Priority Tax Claims have not been classified, and the treatment of such unclassified Claims is set forth immediately below. Generally, an Administrative Expense Claim is a Claim that arises after the bankruptcy filing in favor of a creditor who has provided goods or services to a debtor while it is in bankruptcy. A Priority Tax Claim is an unsecured claim arising in favor of a taxing authority that is entitled to priority treatment under § 507(a)(8) of the Bankruptcy Code.

---

[3] The Debtors and the Bank have agreed that, as of March 29, 2011, the Bank has a secured claim in the amount of $7.1 million.

-8-

### 3.2   *Treatment of Unclassified Claims.*

#### 3.2.1   *Administrative Expense Claims.*

3.2.1.1   <u>Other than Professionals</u>.  Except to the extent that any person or entity entitled to payment of any Allowed Administrative Expense Claim has been paid by the Debtors prior to the Effective Date or agrees to a different treatment, each holder of an Allowed Administrative Expense Claim that is not a Professional Fee Claim shall receive Cash in an amount equal to such Allowed Administrative Expense Claim on the Effective Date or if it is allowed later, within thirty (30) days after the Claim becomes an Allowed Administrative Expense Claim; provided, however, that Allowed Administrative Expense Claims representing liabilities incurred in the ordinary course of business by the Debtors-in-Possession or liabilities arising under loans or advances to, or other obligations incurred by, the Debtors-in-Possession, to the extent authorized and approved by the Bankruptcy Court pursuant a Final Order, if such authorization and approval was required under the Bankruptcy Code, shall be paid (and performed, if a contractual obligation) by Debtors in the ordinary course of business in accordance with the terms and subject to the conditions of any agreements governing, instruments evidencing or other documents relating to such transactions.  To the extent that the Debtors-in-Possession have incurred trade accounts payable (or similar obligations) in the ordinary course of business, these debts will be satisfied and paid by the Reorganized Debtors after Confirmation in full and in the same manner as the Debtors-in-Possession prior to Confirmation.  Thus, any liability properly and legally incurred in the ordinary course of business by the Debtors-in-Possession which becomes an Allowed Administrative Claim shall be paid by the Reorganized Debtors in accordance with the same terms, conditions, and practices as the Debtors-in-Possession.

3.2.1.2   <u>Professional Fee Claims</u>.  All Professionals Fee Claims shall be paid as follows:[4]

    A.    Cash in full at the time of Confirmation unless otherwise agreed; or

    B.    The Debtor anticipates that a lesser treatment of Professional Fee Claims could be 33% on the Effective Date;

    C.    1/12th of the remaining balance to be paid out on a monthly basis in twenty-four (24) monthly installments; or

---

[4] The treatment of Professional Fee Claims assumes that all holders of Professional Fee Claims will have agreed to a treatment other than 100% of their claims paid in full on the Effective Date.  As of the filing of this Plan, negotiations were ongoing.  It is assumed that some of the Professional Fee Claims can be paid as set forth in paragraph (B) above.

D.   In the event of sale of unencumbered assets, such as the remaining proceeds from the sale of the Farm over and above the security interests of the Bank and First Farm Credit these proceeds, may also be used to pay Professional Fee Claims.

The Debtor estimates Professional Fee Claims as follows:

| Name | Amount |
|------|--------|
| Eva Hotard ("Hotard")[5] | $168,000 |
| CHSWC | $100,000 |
| William Factor & Associates ("Factor") | $103,000 |
| Kent Berger, CPA ("Berger") | $ 38,000 |
| Richard W. Martinez ("Martinez") | $ 98,825[6] |
| Total | $507,825 |

In accordance with the foregoing estimates, the amount necessary to be paid on the Effective Date to the holders of Professional Fee Claims is approximately $164,275.

   3.2.1.3   Priority Non-Real Estate Tax Claims.[7]   Priority Tax Claims, which include unsecured Priority Tax Claims, both pre- and post-petition, are not classified.  Priority Tax Claims shall be paid in full, with interest to accrue from the Effective Date at the rate(s) provided by applicable state or federal law for such Priority Tax Claims, from the earning of fuel tax refunds.  The Debtors file quarterly tax refunds and claim $0.17 per gallon in refunds.  At the year end of 2010, the Debtors will file another quarterly return and the Debtors estimate the debt owed to the Internal Revenue Service will be reduced to approximately $136,000.  The Debtors will repay this amount through fuel tax refunds over a three (3) year period from the Effective Date, as such proceeds become available

---

[5] The amounts shown for Hotard, Factor and Martinez include amounts held back by this Court pursuant to previous interim orders entered by this Court, and Factor's estimated total is based upon both fees held back pursuant to previous order of this Court and an approved additional fee award.

[6] Martinez, Hotard and Berger have filed final fee applications.  It is unknown if the Debtors will object to any of the Professional Fee Claims.  CHSWC will file a final fee application.

[7] The Debtors believe the sole priority tax claim owed consists of the Internal Revenue Service in the amount of $147,683, which, as discussed herein, has historically been and will continue to be paid with funds generated by fuel tax refunds.

after the Confirmation Date and within three (3) years of the date of assessment as to each such Priority Tax Claim.

        3.2.1.4     <u>Real Estate Tax Claims</u>.  The Debtor owes the sum of $395,325.21 for pre-petition real estate taxes for properties owned by the Debtor in Illinois, Texas and Colorado (the "Pre-Petition Real Estate Tax Claims").  The Pre-Petition Real Estate Tax Claims shall be paid over a three (3) year period ending July 18, 2014 on a quarterly basis.  Post-Petition Real Estate Tax Claims, totaling $429,292.00 (including accrued penalties and accrued interest), of which the majority was represented by real estate taxes due and owing with respect to the Elk Grove Village, Illinois property and approximately $23,000 and approximately $15,000 due and owing with respect to the Colorado and Texas properties owned by the Debtor, respectively, have been paid prior to Confirmation of the Plan.[8]  Real Estate Tax Claims are classified as Class 3 Claims.

        3.2.1.5     <u>Statutory Fees Due the United States Trustee</u>.  Pursuant to 28 U. S. C. §1930(a)(6), the statutory fees of the United States Trustee shall be paid in Cash as such fees become due and payable before (and to the extent owed, after) Confirmation in full on Effective Date.

    3.3    *Deadline for Filing Administrative Expense Claims*.  Except as otherwise provided by any Order of the Bankruptcy Court or this Plan, the deadline for any Entity to assert an Administrative Expense Claim entitled to priority under § 507(a) of the Bankruptcy Code shall be 30 days after the entry of the Confirmation Order (the "*Administrative Expense Claim Deadline*").  Any Administrative Claim not filed by the Administrative Expense Claim Deadline shall be deemed untimely and shall not be entitled to a distribution under the Plan.

---

[8] As of September 23, 2011, the Debtors maintained $431,723 in their aggregated bank accounts.  In addition, the Debtors' leasing of space in Elk Grove Village, Illinois to third parties Chicago Classic and Grand Prairie, and providing those parties with parts and repair services will further bolster the Debtors' future projected revenue.  Efforts continue to locate additional tenants for the Debtors' Elk Grove Village, Illinois facility, to provide increased revenue.  The Debtors have further improved their reorganization prospects by entering into a three (3) year Bus Shuttle Contract with 600 West Chicago Associates LLC, for provided shuttle service (the "Shuttle Contract").  The Shuttle Contract will result in at least $277,000 of net revenue to the Debtors on a yearly basis.  The Shuttle Contract and rental income alluded to herein more than compensate for revenue lost by the Debtors as a result of the loss of the School District 214 contract.  The Debtors are cognizant of the need to modify their business plan in a depressed economy, and are committed to making necessary changes.

-11-

# ARTICLE 4.
# CLASSIFICATION AND TREATMENT OF CLAIMS AND EQUITY INTERESTS

4.1     *Classification of Claims and Interests.*  This classification of Claims is made for purposes of voting on the Plan, for making distributions thereunder, and for ease of administration thereof.  Claims and Equity Interests are divided in Classes set forth below. A Claim or Equity Interest will be placed in a particular Class only to the extent the Claim or Interest qualifies within the description of the Class, and may be in a different Class to the extent that the remainder of the Claim or Interest qualifies within the description of such different Class. A Claim or Interest will be entitled to the treatment accorded a particular Class only to the extent that such Claim or Interest is Finally Allowed.

4.2     *Classes.*  For purposes of this Plan, those Entities holding Claims against or Equity Interests in the Debtors are grouped and shall be treated as follows:

4.3     *Classification of Claims.*  Claims are classified for all purposes, including voting, confirmation and distribution pursuant to the Plan as follows:

4.3.1   *Class 1 - The Bank Claim.* Class 1 consists of the Allowed Secured Claim of the Bank in the amount of $7.1 million, as of March 29, 2011.

4.3.2   *Class 2 - Real Estate Tax Claims.*  Class 2 consists of the pre-petition Real Estate Tax Claims of the counties in which the Debtors' real properties are located in Illinois, Colorado and Texas.  Class 3 Claims total approximately $395,325 (including accrued penalties and accrued interest).

4.3.3   *Class 3 - Secured Claims of Farm Credit Services.*  Class 3 consists of Allowed Secured Claims attaching to real property owned by D&B Rentals LLC located at 7909 Manley Road, in Harvard, Illinois (the "Farm").

4.3.4   *Class 4 - General Unsecured Claims.* Class 4 consists of Allowed Unsecured Claims that are not a Class 5 Claim, Class 6 Claim or Class 7 Claim.

4.3.4   *Class 5 - Convenience Class Claims.*   Class 5 consists of all Unsecured Claims of Creditors that are owed less than $1,000, or that have elected to reduce their Allowed Claim to less than $1,000.

4.3.5   *Class 6 - Rejection Claims.*  Class 6 consists of Allowed Unsecured Claims, if any, arising from the rejection of an executory contract or unexpired lease.

4.3.6   *Class 7 - Insider Claims.*  Class 7 consists of Allowed Unsecured Claims held by Insiders, consisting solely of Karen A. Bingham.

4.3.7  *Class 8 - Equity Interests*.  Class 8 consists of the Equity Interests in the Debtors.

4.4     *Treatment of Allowed Claims and Equity Interests*

4.4.1  *Class 1 - Bank Claim*.  The Allowed Bank Claim is impaired under the Plan and the holder of the Allowed Bank Claim is entitled to vote to accept or reject the Plan.

4.4.1.1     The Allowed Bank Claim shall be secured by liens and security interests in the same real and personal property of the Reorganized Debtors as during the Debtors' Chapter 11 case and shall be paid out of operating income of the Debtors, and the possible sale of real and personal property of the Debtors and/or refinancing of the Allowed Bank Claim.  The Debtors intend to sell the Farm, thereby reducing the Allowed Bank Claim by at least the amount of $500,000, representing the Bank's Secured Claim attaching to the Farm.

4.4.1.2  If the Debtors obtain financing subsequently to the Effective Date, they will file a motion with the Bankruptcy Court seeking authorization of the refinancing.  Otherwise, the Debtors will pay the Bank monthly principal and interest payments, based upon an interest rate of 6.75% and a claim of $7.1 million as of March 28, 2011.  At the expiration of two and one-half (2.5) years, estimated to be April 2014, a balloon payment will be due, and in the event the Debtors have not secured refinancing of the Bank Debt or have a letter of intent for such refinancing, the Debtors will agree to a liquidation of their assets by the Bank either in or out of Bankruptcy Court.  The Debtors will provide monthly reporting to the Bank.

4.4.1.3  No prepayment penalty shall apply to any prepayment, in full or in part, by the Reorganized Debtors.

4.4.2  *Class 2 - Real Estate Tax Claims* - Class 2 Claims in the approximate amount of $395,000 will be paid over a three (3) year period on a quarterly basis, from the proceeds of operations.  Class 3 is impaired.

4.4.3  *Class 3 - Secured Claim of First Farm Credit Services* - The secured claim of First Farm Credit Services in the approximate amount of $323,000 attaching to the Farm, will be paid out of the proceeds of the sale of the Farm.

4.4.4  *Class 4 - General Unsecured Claims*.  Class 4 consists of Allowed Unsecured Claims.  Class 4 is impaired.  Holders of Allowed General Unsecured Claims shall receive 100% of the amounts owing to them in quarterly payments over a four (4) year period beginning November 30, 2011 with interest accruing at five percent (5%).  Such Allowed Claims will be paid from any of the following: (1) funds on hand of the Reorganized Debtors; (2) funds available after refinancing; or (3) other sources of cash that are allowed under this Plan or as approved by the Bankruptcy Court.

4.4.5 *Class 5 - Unsecured Claims, Convenience, or Opted In for $1,000 Payment.* Class 5 is impaired. Class 5 consists of (1) the Finally Allowed Unsecured Claims of Creditors owed less than $1,000 and (2) Creditors owed an amount greater than $1,000 who elect to reduce their Claims to $1,000 in exchange for receiving immediate payment (the "*Convenience Class Election*"). Each holder of a Class 5 Claim shall be paid a single payment of the Finally Allowed Claim or $1,000 within 60 days of the Effective Date. Convenience Class Elections shall be made on August 15, 2011. Creditors wishing to make Convenience Class Elections shall do so by indicating their elections on the Official Ballot form submitted in connection with the Plan. Any Creditor that makes the Convenience Class Election shall be deemed to have voted in favor of the Debtors' Plan.

4.4.6 *Class 6 - Rejection Claims.* Class 6 consists of the Allowed Claims resulting from the Debtors' rejection of any executory contract or unexpired lease. Class 6 is impaired. Amounts owed to the holders of any Allowed Class 6 Claims shall be aggregated with the amounts owed to the holders of Allowed Class 4 Claims and shall be paid on a pro rata basis like Class 4 Creditors.

4.4.9 *Class 7 - Subordinated Claims of Insiders.* Class 7 consists of the Allowed Claims held by Insiders. Class 7 is impaired. The only member of this class is Karen A. Bingham, who holds a claim in the approximate amount of $1,379,306.60 as to the ACTC tax consolidated group and a claim of $40,823.20 against D&B Rental, LLC. Ms. Bingham shall receive payment of 100% of her Allowed Class 8 Claim. However, as an insider, Ms. Bingham's Claim shall be subordinated to the prior payment of all claims in full, and thus she will be entitled to payment only after the holders of all Allowed Claims have received payment in full. Until all Allowed Claims are paid in full and suitable reserves established to pay any Disputed Unsecured Claims, no funds, other than normal salary and benefits, shall be paid to Ms. Bingham as the holder of the Class 7 Claim.

4.4.10 *Class 8 - Equity Interests.* Class 8 consists of the Equity Interests in the Debtors. Members/owners will maintain their interest in the Debtors.

## ARTICLE 5
## IMPAIRMENT OF CLASSES

5.1 Allowed Claims within Classes 1, 2, 3, 4, 6, 7 and 8 are impaired under the Plan. Classes 7 and 8, as insiders, will not vote.

-14-

# ARTICLE 6
## MEANS FOR IMPLEMENTATION OF THE PLAN

6.1 *Claims Bar Date*. The Bankruptcy Court fixed March 8, 2010, as the bar date for filing Claims against the Debtors. That bar date is effective as to all creditors and parties in interest asserting rights to payment. The disputed claims are resolved. The Fourth Amended Plan, withdrawn by the Debtors, was balloted and voted upon by creditors. A new balloting procedure, as well as a hearing on the Debtor's new disclosure statement, will need to be implemented.

6.2 *Consolidation for Distribution Purposes Only*. Pursuant to § 1123 of the Bankruptcy Code, on the Effective Date, each of the Debtors' estates shall be consolidated for distribution purposes only. Southwest Prevost, Inc., the owner of real property housing the Debtor's Commerce City, Texas operations shall continue to allow its real property to serve as collateral for the Bank Debt, and agrees to be bound by the terms of this Plan.

6.3 *Sale of Assets*. Notwithstanding the occurrence of the Plan's Effective Date, pursuant to, among other things, § 1123(b)(4) of the Bankruptcy Code, the Debtors shall have the ability to seek an Order from the Bankruptcy Court authorizing them to sell property free and clear of any interests therein and to pay the proceeds to the holders of secured claims attaching thereto. The Debtors propose to immediately market the Farm and have employed Harding Real Estate for that purpose.

6.4 *Release and/or Assignment of Causes of Action*. On the Effective Date, all rights, Claims, and Causes of Action of the Debtors, including, but not limited to, Claims and Causes of Action pursuant to §§ 541, 542, 544, 545, 547, 548, 549, 550 and 553 of the Bankruptcy Code shall be preserved and become property of the Reorganized Debtors. On the Effective Date, the Reorganized Debtors shall be deemed the representatives of the estates under § 1123(b) of the Bankruptcy Code and will be authorized and shall have the power to commence and litigate, amend and litigate, or commence and litigate any and all Causes of Action which could have been asserted by the estates. The Reorganized Debtors may pursue such Causes of Action in the Bankruptcy Court and may retain such counsel, accountants, or other persons as the Reorganized Debtors deems necessary in connection therewith or in connection with liquidation of estate property or performance of the responsibilities of the Reorganized Debtors. All recoveries, if any, received from or in respect of the retained Claims and Causes of Action, whether by settlement, judgment or otherwise, shall become the property of the Reorganized Debtors to be distributed pursuant to the terms of the Plan. The cost and expenses, including legal fees and disbursements, incurred in connection with the prosecution of such Claims and Causes of Action shall be paid by the Reorganized Debtors without necessity of approval by the Bankruptcy Court. From and after the Effective Date, the Reorganized Debtors may litigate any avoidance or recovery actions and any other Causes of Action or rights to payments of Claims belonging to the Debtors that have not specifically been released by the Plan.

6.5     *Litigation.* The Reorganized Debtors as proper party plaintiff pursuant to, *inter alia,* § 323 of the Bankruptcy Code, the Federal Rules of Civil Procedure, Rule 7017, shall pursue all Causes of Action for and on behalf of the estates whether known or unknown currently in existence or accruing to the Debtors at any time prior to the effective date for the benefit of the estate.

6.5.1   *Bank Litigation.* On January 31, 2010 the Debtors brought Adversary Proceeding No. 10-00154 against the Bank for damages. The matter is captioned *American Consolidated Transportation Companies, et al v. RBS Citizens N.A., d/b/a Charter One, Charter One Bank, N.A. and John Does 1-99* (the "Bank Litigation"). The Bank Litigation has been resolved to allow the Bank a $7.1 million claim as of March 29, 2011. The Debtors reserved their right to object to any additional attorneys' fees of the Bank or accrual of default interest claimed by the Bank. By way of illustration, the Bank Claim currently includes over $1,000,000 of attorneys' fees for a claim of $7.1 million. The bank is not entitled to interest at the default rate.

6.6     *Courts and Venue.* This Plan does not require the Debtors to bring litigation in any particular court. The Debtors have the unfettered right as if this Plan did not exist to bring action in any state court, federal court or other tribunal of competent jurisdiction to pursue the Causes of Action preserved pursuant to this Plan.

6.7     *Payments.* The Debtors shall not be required to move for authority to make payments pursuant to the Plan, but may from time to time, and in the best interest of the creditors seek Orders from the Bankruptcy Court in aid of consummation. The Debtors shall move for authority from the Bankruptcy Court for a specific application of funds should the Bank and the Reorganized Debtors not reach agreement upon the application of payment of funds received from the sale of the Debtors' assets or return of assets to the Bank.

6.8     *Changes in Business and Business Operation.* The Debtors have made significant changes to their business to increase revenue and reduce expenses as referenced frequently herein.

6.9     *Reduced Rental to D&B Rental, LLC.* The ACTC Tax Consolidation Group shall continue to rent from D&B, however, the rent shall be reduced by $68,000 annually ($5,666.67 per month) to $103,600.00 annually resulting in a monthly payment of $8,633.33. The Debtors have rented to Chicago Classic, Inc., an unrelated party, a portion of its Elk Grove Village, Illinois facilities, and are experiencing increased revenue in parts and repairs, as well as the rental income as a result, The rental has not affected the Debtors' capacity of business. Additionally, the Debtors may enter into additional operating contracts with parties to lease space for parts, service, bus wash facilities, administration, or other services. The real estate firm of Colliers, Bennett and Kahnweiler have been employed for this purpose.

6.10   *Management.*   The Reorganized Debtors are managed by Chief Operating Officer, Charles "Trip" Bellows III and Vice President of Sales and Marketing, Cory Peters, for the facilities in Chicago, Illinois; Commerce City, Colorado; and Grand Prairie, Texas. Three sales managers have already been hired by the Debtors to coordinate and build sales at all locations. The Sales Managers are located in Chicago, Grand Prairie and Commerce City. The General Managers at Grand Prairie, Texas, and Commerce City, Colorado, will report directly to the Mr. Peters. Ms. Bingham will remain a member of the Board and have reduced daily management duties. Her salary has been reduced to approximately $70,000 per year.

6.11   *Sales Effort.*   The General Manager and all individuals in the current sales team will be charged with the duty of increasing customer interest in the business. The Sales Managers will address primarily the coach side of the business. The Sales Managers shall create and effectuate, in conjunction with the General Manager, the Chief Operating Officer and the Vice President of Sales and Marketing, a focused, aggressive sales plan.

6.12   *Refurbishment of Current Coaches.*   In order to increase revenue, the Debtors shall refurbish, for cosmetic purposes, certain existing coaches. Commencing in 2010, and continuing for 2011 and 2012, the Debtors anticipate refurbishment of two buses per year in each location, for a total of eighteen buses at $3,000 per bus for a total refurbishment cost of $54,000.

6.13   *Computer Upgrade.*   The Debtors shall upgrade the computer hardware and software systems to include a system which is capable of integrated email communication with clients and data flow from the main computer to authorized terminals. The Debtors' customers prefer to communicate in email with a reduction in facsimile communications. The upgrade shall reduce the IT expense to the outside vendor.

## ARTICLE 7
## MANAGEMENT AND OPERATION OF THE REORGANIZED DEBTORS

7.1   *Post-Confirmation Rights of Holders of Equity Interests.*   All existing Equity Interests in the Debtors shall remain with the holders of such Equity Interests.

7.2   *Post-Confirmation Management.*   The Debtors shall be managed by the Chief Operating Officer. In addition, the current Safety Manager Shop Manager and General Managers in Colorado and Texas shall report to the General Manager.

7.2.1   *Eva Hotard.*   Ms. Hotard has significantly reduced her time as a consultant and as the Chief Operating Manager of the business.

-17-

## ARTICLE 8
## AMENDMENTS

8.1     This Plan may be amended, modified or supplemented by the Debtors before or after the Confirmation Date in the manner provided for by § 1127 of the Bankruptcy Code or as otherwise permitted by law without additional disclosure pursuant to § 1125 of the Bankruptcy Code, except the Bankruptcy Court may otherwise order.

## ARTICLE 9
## EXECUTORY CONTRACTS AND LEASES

9.1     *Assumption or Rejection of Executory Contracts.*   All Executory Contracts that have not, as of the Confirmation Date, been rejected by the Debtors or pleadings filed to reject such Executory Contracts shall be assumed as of the Confirmation Date.

9.2     *Cure of Defaults.* As to any Executory Contracts assumed during the Chapter 11 Cases or pursuant to this Article 9, the Debtors shall, pursuant to the provisions of § 1123(a)(5)(G) of the Bankruptcy Code, cure all defaults existing under and pursuant to such Executory Contracts by paying the amount, if any, claimed by any party to such Executory Contract in a proof of claim, which proof of claim shall be filed with the Court within sixty (60) days of such assumption.

9.3     *Continuing Jurisdiction.*  Subject to Article 13 hereof, the Bankruptcy Court shall retain jurisdiction after the Effective Date to make determinations regarding the Claims which may be asserted, and which may be objected to, pursuant to Article 10.

## ARTICLE 10
## PROVISIONS RELATED TO DISPUTED CLAIMS

10.1    *Reservation of Rights.*

10.1.1       The failure by the Debtors to object to, or examine, any Claim for purposes of voting shall not be deemed a waiver of the Debtors' right to object to or re-examine the Claim, in whole or in part, for any other purpose, including, but not limited to, distribution of property.

10.1.2       The Debtors and Reorganized Debtors shall have, retain, reserve and be entitled to assert all Claims, Causes of Action, rights of setoff and other legal or equitable defenses that the Debtors had prior to the Petition Date as if these Chapter 11 Cases had not been commenced.  All of the Debtors' legal and equitable rights respecting any Claim may be asserted after the Effective Date to the same extent as if the Chapter 11 Cases had not been commenced.

-18-

10.2 *Resolution of Disputed Administrative Expense Claims and Disputed Claims.* Unless otherwise ordered by the Bankruptcy Court after notice and hearing, the Debtors or Reorganized Debtors shall have the right to make and file objections to Administrative Expense Claims and other Claims and shall serve a copy of each objection upon the holder of the Disputed Claim. To the extent the Debtors have commenced a proceeding objecting to a Claim, the Reorganized Debtors shall, upon the Effective Date, automatically and with no further action required supplant the Debtors as the parties pursuing such objection and shall be vested with all of the rights and obligations of the Debtors in such proceeding. Subject to any prior Orders entered in these Chapter 11 Cases, the Debtors and Reorganized Debtors shall be required to file objections to Administrative Expense Claims within the later of 30 days after the Effective Date or 30 days after such Administrative Expense Claim is filed.

10.3 *No Payments.* Notwithstanding any other provisions of this Plan, no payments or distributions shall be made on account of any Disputed Claim until and unless such Claim becomes a Finally Allowed Claim, and then only to the extent that it becomes an Allowed Claim.

10.4 *Claim Dispute Resolution Procedures.* If the Debtors or Reorganized Debtors have commenced a proceeding objecting to a Claim subsequent to the Confirmation Date, including an Administrative Expense Claim or a Priority Claim, the resolution of any disputes regarding such Claims shall be subject to the following parameters:

10.4.1 *Less than $5,000.* If the settlement amount for any Disputed Claim is less than $5,000, the Debtors or Reorganized Debtors shall be authorized to settle such Disputed Claim without the need for further Bankruptcy Court approval or further notice.

10.4.2 *Greater than $5,000.* If the settlement amount for a Disputed Claim is greater than or equal to $5,000, the Debtors or Reorganized Debtors shall file a proposed settlement motion with the Bankruptcy Court with notice and hearing consistent with the Bankruptcy Rule 9019.

## ARTICLE 11
## PROVISIONS RELATED TO DELIVERY
## OF DISTRIBUTIONS UNDER PLAN

11.1 *Distribution by U.S. Mail.* Except as provided below for undeliverable distributions, distributions to holders of Allowed Claims shall be distributed by U.S. mail as follows: (i) at the addresses set forth on the proofs of claim filed by such holders; (ii) at the addresses set forth in any written notices of address changes filed with the Bankruptcy Court or delivered to Reorganized Debtors after the date of any related proof of claim; or (iii) at the address reflected on the Debtors' Schedules of Assets and Liabilities if no proof

of claim is filed and  no notice of a change of address has been filed or delivered to Reorganized Debtor.

11.2 *Change of Addresses*.  All notices of change of address, to be effective, shall (i) prior to the Effective Date, be filed with the Bankruptcy Court, or (ii) following the Effective Date, be delivered to the Reorganized Debtors at the address set forth in the Plan.

11.3 *De Minimus Distributions and Rounding*.  No Cash payment of less than one dollar ($1.00) will be made by the Reorganized Debtors to any holder of an Allowed Claim. The amount of all distributions that otherwise call for a fraction of a cent shall be rounded to the nearest cent up or down with half cents or less being rounded down.

11.4 *Undeliverable Distributions*.  The Reorganized Debtors shall hold all distributions that have been returned as undeliverable until such time as the Creditor entitled to such distribution becomes a Lost Creditor.  If the Creditor that is entitled to such distribution notifies the Reorganized Debtors in writing of a new address within one year of the applicable date of the distribution, the Reorganized Debtors shall mail the distribution, and any further distributions, to the new address for such Creditor.

11.4.1 Nothing contained in the Plan shall require the Debtors or the Reorganized Debtors to attempt to locate any holder of an Allowed Claim.

11.5 *Compliance With Tax Requirements*.  To the extent applicable, the Debtors and Reorganized Debtors shall comply with all withholding and reporting requirements imposed by any governmental unit, and all distributions pursuant to the Plan shall be subject to such withholding and reporting requirements.

11.6 *Setoffs*.  The Debtors or Reorganized Debtors may, but shall not be required to, set off against any Allowed Claim, Claims of any nature that the Debtors or the Reorganized Debtors may have against the holder of such Allowed Claim; provided, however, that neither the failure to effect such a setoff nor the allowance of any Claim against the Debtors or the Reorganized Debtors shall constitute a waiver or release by the Debtors or the Reorganized Debtors of any Claim that the Debtors or Reorganized Debtors may possess against such holder.

## ARTICLE 12
## CONSUMMATION OF PLAN
## AND VESTING OF ASSETS

12.1 *Vesting and Transfer of Assets to Reorganized Debtors*.  Pursuant to § 1141(c) of the Bankruptcy Code, and except as otherwise provided herein, on the Effective Date, all assets shall vest in the Reorganized Debtors free and clear of all liens, claims, encumbrances and interests.

# ARTICLE 13
## RETENTION OF JURISDICTION
## AND SUPERVISION OF THE PLAN

13.1  *Scope of Jurisdiction.*  In addition to the retention of jurisdiction provided for elsewhere in this Plan, the Bankruptcy Court shall retain jurisdiction to hear and, if applicable law provides, determine the following proceedings (and the Debtors hereby consents to such retention of jurisdiction):

13.1.1  Any and all objections to the allowance or disallowance of Claims, including Administrative Expense Claims;

13.1.2  Any and all applications for payments of fees made by attorneys and other professionals pursuant §§ 330 or 503 of the Bankruptcy Code and any other fees and expenses authorized to be paid or reimbursed under the Bankruptcy Code and any and all objections thereto;

13.1.3  Any and all pending applications for the rejection, assumption or assumption and assignment, as the case may be, of Executory Contracts to which the Debtors are a party or with respect to which they may be liable, and to hear and determine any and all Claims arising therefrom;

13.1.4  Modifications of the Plan or corrections of any defect, omission or inconsistency in the Plan or in any order of the Court, including the Confirmation Order, to the extent authorized by the Bankruptcy Code;

13.1.5  To the extent consistent with 28 U.S.C. § 157, all controversies, suits and disputes that may arise in connection with the interpretation, enforcement or confirmation of this Plan or any document or instrument delivered pursuant thereto except to the extent otherwise provided in this Plan;

13.1.6  Implementation of the Plan;

13.1.7  Entry of a final decree closing the Chapter 11 Cases;

13.1.8  Estimation of contingent or unliquidated Claims;

13.1.9  Any pending or future litigation arising out of the avoidance powers given the Debtors as Debtors-in-Possession under the Bankruptcy Code;

13.1.10 Such other matters as may arise in connection with this Plan, or any other order of the Court, including the Confirmation Order; and

13.1.12 Any challenge to the ability of Post-Confirmation management of the Reorganized Debtors.

-21-

# ARTICLE 14
## DISCHARGES AND RELEASES

14.1   *No Liability for Solicitation or Participation.*  As specified in § 1125(e) of the Bankruptcy Code, Persons that solicit acceptances or rejections of the Plan are not liable on account of such solicitation or participation for violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan.

14.2   *Release of Claims.*  The rights afforded to holders of Claims and Equity Interests by and in the Plan shall be in exchange for and in complete release, satisfaction and discharge of all Claims against the Debtors, except as otherwise provided herein.

14.3   *Effect of Confirmation.*  In accordance with §1141 of the Bankruptcy Code, the Confirmation of the Plan binds the Debtors, any Entity issuing securities under the Plan, any Entity acquiring property under the Plan, and any Creditor, or holder of an Equity Interest, whether or not the Claim or Equity Interest is impaired under the Plan and whether or not such Creditor, equity security holder or general partner has accepted the Plan. Confirmation of the Plan vests all of the property of the Debtors' estates in the Reorganized Debtors, except as provided in the Plan. After Confirmation of the Plan and except as provided otherwise herein, the property dealt with by the Plan is free and clear of all claims and interests of Creditors and equity security holders. Except as otherwise provided in § 1141(d) of the Bankruptcy Code, in this Plan or in the Confirmation Order, the Confirmation of this Plan discharges the Debtors from any debt or obligation that arose before the date of Confirmation and any debt of a kind specified in §§ 502(g), 502(h), or 502(i) of the Bankruptcy Code.

14.4   *Exculpation.*  The Debtors and Reorganized Debtors and each of their respective directors, officers, employees, agents, representatives and attorneys, and each of their heirs, executors, administrators, successors and assigns, shall neither have nor incur any liability to any Person for any act taken or omitted in connection with or related to the administration of the Chapter 11 Cases, the solicitation of votes on, or the negotiation, preparation, formulation, solicitation, dissemination, implementation, confirmation or consummation of the Plan, the Disclosure Statement or any contract, instrument, release or other agreement or document created or entered into, or any other act taken or omitted in connection with the Chapter 11 Cases or the Plan, other than gross negligence or willful misconduct.

14.5   *Injunction.*  Except as otherwise provided in the Confirmation Order, all Entities, including, but not limited to, all Creditors (present, future, contingent, non-contingent, matured, unmatured, secured, unsecured, asserted, unasserted, liquidated or unliquidated), employees and former employees, and their respective successors and assigns, including any trustee subsequently appointed, shall be permanently enjoined, restrained and precluded, from asserting, commencing or continuing in any manner, any action, encumbrance, lien, setoff, claim, or right of recoupment, against the Debtors,

-22-

Reorganized Debtors or any property of the foregoing, related in any manner to any matter occurring prior to the Effective Date of the Plan.

## ARTICLE 15
## MISCELLANEOUS PROVISIONS

15.1 *No Interest*. Except as expressly stated in this Plan, or allowed by the Bankruptcy Court, no interest, penalty or late charge is to be allowed on any Claim subsequent to the Petition Date.

15.2 *No Attorneys' Fees*. No attorneys' fees will be paid with respect to any Claim, except as specified herein or as allowed by an order of the Bankruptcy Court.

15.3 *No Waiver of Discharge*. Nothing in this Plan shall be deemed to waive, limit or restrict in any way the discharge granted upon Confirmation of the Plan pursuant to § 1141 of the Bankruptcy Code.

15.4 *Confirmation Over Objection*. In the event any impaired Class shall fail to accept the Plan, the Debtors request that the Bankruptcy Court confirm the Plan in accordance with the applicable provisions of § 1129(b) of the Bankruptcy Code.

15.5 *Right to Pay*. The Debtors shall have the right to pay in full or in a pro rata share the fully Allowed Claims in a Class if all such Claims have been determined and to the extent funds exist at any time without penalty or premium by payment of all outstanding principal and accrued interest, if any applicable.

15.6 *Effectuating Documents and Further Transactions*. The Debtor is authorized and required to execute, deliver, file or record such contracts, instruments, releases, indentures and other agreements or documents and take such actions as may be reasonably necessary or appropriate to effectuate, implement and consummate the Plan without any further evidence of the terms and conditions of the Plan and any notes or securities issued pursuant to the Plan, or any action of the Debtor or its managers to authorize such; the acting Manager of the Reorganized Debtor will be heretofore and without any further need of court orders or Board actions, deemed to be authorized to execute any of the aforesaid documents or agreements or to take any of the aforementioned steps to confirm, implement and consummate the Plan of Reorganization. The Plan will be binding upon and inure to the benefit of the Debtor, claimants, Equity Interests and their respective successors and assigns, including, without limitation, the Reorganized Debtor; and the court may issue such orders in aid of consummation of the Plan under §§105 and 1142, of the Bankruptcy Code

DATED: October 5, 2011       Respectfully submitted,

                     AMERICAN CONSOLIDATED
                     TRANSPORTATION COMPANIES, INC., *et al.*
                     debtors/debtors-in-possession

                     By: /s/Scott R. Clar
                            One of their attorneys

**DEBTORS' COUNSEL**
SCOTT R. CLAR, ESQ.
(Atty. No. 06183741)
CRANE, HEYMAN, SIMON, WELCH & CLAR
135 S. LaSalle, #3705
Chicago, IL 60603
(312) 641-6777
\mjo2\ACTC\Plan - 7th.wpd